IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SHIVANI BHATIA, M.D.,

     Plaintiff,

v.

CHILDREN'S HEALTHCARE OF
ATLANTA, INC.,

     Defendant.

CIVIL ACTION FILE

No. 1:21-cv-_____

JURY TRIAL DEMANDED

## **COMPLAINT**

Plaintiff Shivani Bhatia, M.D. ("Plaintiff" or "Dr. Bhatia"), brings this action against her former employer, Children's Healthcare of Atlanta, Inc. ("CHOA"), showing the Court as follows:

### *Introduction*

1.

Plaintiff brings this action to enforce the terms of a written employment agreement  (the "Employment Agreement") and pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq.*, as amended and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, for damages to compensate her for economic loss and other injuries she has sustained as a consequence of unlawful employment

practices committed against Plaintiff on account of her race and nationality and to retaliate against her for raising issues related to ongoing and pervasive discrimination at Defendant CHOA.

## *Parties, Jurisdiction, and Venue*

2.

This Court has jurisdiction over the subject matter of this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* and 28 U.S.C. § 1331 and 1367.

3.

Defendant CHOA is a nonprofit corporation, organized and existing under the laws of the State of Georgia. CHOA can be served by and through its registered agent CSC of Cobb County, Inc., 192 Anderson Street, Suite 125, Marietta, Georgia 30060.

4.

The venue of this action is proper before this Court pursuant to 28 U.S.C. § 1391 because this is the judicial district and division in which CHOA resides and in which a substantial part of the events giving rise to this case occurred. Plaintiff is a citizen of the United States and was a resident of Fulton County, Georgia, during her employment with Defendant CHOA.

*Background Facts*

5.

Plaintiff is a natural person and former employee of CHOA.  Plaintiff is an Asian woman who was born in India and is a naturalized citizen of the United States of America.

*Facts Relevant to All Claims*

6.

Dr. Bhatia was employed by CHOA as a pediatric anesthesiologist from November 2008 until September 9, 2020. This action arises from CHOA's unlawful termination of Dr. Bhatia's employment.

7.

In terminating Dr. Bhatia's employment, CHOA discriminated against Dr. Bhatia based on her race (Asian) and national origin (Indian); retaliated against Dr. Bhatia based on her opposition to discrimination; breached its contract with Dr. Bhatia; and failed to exercise the duty of good faith and fair dealing in connection with the parties' employment contract.

8.

Dr. Bhatia was employed by CHOA as a pediatric anesthesiologist from November 1, 2008, until September 9, 2020.  Dr. Bhatia and CHOA entered into the

Employment Agreement on or about November 1, 2008, with a term of employment of one (1) year and which automatically renewed for additional one-year terms unless sooner terminated pursuant to the terms of the Agreement. A true and correct copy of the Employment Agreement is attached hereto as Exhibit "A."

9.

Pursuant to Section 9.3.1 of the Employment Agreement, CHOA was entitled to terminate Dr. Bhatia's employment for cause: (i) for a material breach of the Agreement and after giving her thirty (30) days prior written notice of such breach and an opportunity to cure the same; or (ii) immediately for a variety of enumerated reasons, the only one of which conforms to CHOA's stated reason for terminating Dr. Bhatia was Section 9.3.2.11, "Physician's use of alcohol or a controlled substance that materially impairs Physician's ability to perform effectively Physician's duties and obligations under this Agreement."

10.

Throughout the course of her employment, Dr. Bhatia was an exceptional employee who was dedicated to her patients, her practice, and her coworkers.

## Racism at CHOA and CHOA's Reasons for Retaliation

11.

In or about July 2020, Dr. Bhatia and numerous other members of CHOA's staff were exposed to COVID-19 during an emergency procedure. Even though the CHOA laboratory learned that the subject patient had tested positive for COVID, nobody in the procedure room was notified of the test results. Rather, they were told the patient was negative for COVID. When the affected employees made their objections to the situation known, CHOA warned the employees that should any of them get tested for COVID following the exposure they would be required to take unpaid leave until they received negative test results.

12.

CHOA's attempt to discourage staff from being tested for COVID after exposure was a clear violation of public health protocols, including Governor Kemp's June 29, 2020 Executive Order mandating that healthcare providers "**shall** implement measures which mitigate the exposure and spread of COVID-19." (Emphasis in original.)

13.

Dr. Bhatia reacted to the above-describe episode by creating a social media post that praised the CHOA staff for their selfless, frontline work in the face of the COVID pandemic.

14.

Dr. Bhatia's concerns were similar to those expressed by other providers that CHOA was not doing enough to protect its patients and employees from COVID.

15.

Because CHOA felt Dr. Bhatia's social media post invited unwanted scrutiny of CHOA's policies and procedures related to COVID, CHOA let Dr. Bhatia know that her posts lauding the dedication of CHOA employees were unwelcome, and CHOA required that Dr. Bhatia take them down.

16.

Additionally, on July 6, 2020, Dr. Bhatia lodged a written complaint with CHOA about racist behavior she witnessed (and was one target of) by Dr. Josh Murphy (the "Murphy Complaint").  A true and correct copy of the Murphy Complaint is attached hereto as Exhibit "B."

17.

The Murphy Complaint involved Dr. Murphy communicating with the Pakistani family of a CHOA patient in an insulting and racist manner. As she reported to CHOA, when Dr. Bhatia encouraged Dr. Murphy to adopt a more comforting and reassuring tone in dealing with anxious family members, Dr. Murphy launched into a racist diatribe, saying that he could not "deal with Indian families," that Indian people are "high maintenance," that Indians who were born India are "the worst" and ask too many questions, and that Indians think they are more intelligent than they are. Apparently, Dr. Murphy did not understand that there is a difference between Indian and Pakistani nationality. Dr. Murphy made other derogatory, race-based comments about people of Indian heritage as well.

18.

Dr. Bhatia explained to Dr. Murphy that she was Indian, at which point Dr. Murphy attempted, in a half-hearted manner, to exclude Dr. Bhatia from his racist stereotypes, saying, because Dr. Bhatia she was raised in America, his racist rant did not apply to her.

19.

When Dr. Bhatia pushed back against Dr. Murphy's racist and offensive comments, Dr. Murphy asked for another anesthesiologist and even went so far as to admit that Dr. Bhatia's race played a part in that request.

20.

Upon receiving her complaint regarding Dr. Murphy, CHOA immediately began to retaliate against Dr. Bhatia, which culminated in her termination two months later.

21.

One week after her complaints about Dr. Murphy, CHOA placed Dr. Bhatia on a performance improvement plan ("PIP").

22.

Dr. Bhatia was told she was placed on a PIP for using personal leave days, although she had them available, and they were taken by other employees. She was also told to arrive to work earlier, although tardiness had never been raised as an issue with her, and numerous other employees regularly arrive later than she did.

23.

In connection with the PIP, Dr. Bhatia was also criticized for the social media post referenced above.

24.

The PIP raised two cases involving clinical care, neither of which involved any fault on the part of Dr. Bhatia.

25.

CHOA had no basis for placing Dr. Bhatia on a PIP.

26.

Although she disagreed with the factual bases of the PIP or the need for one at all, it was clear to Dr. Bhatia that she could successfully meet all of the PIP's requirements.  So, rather than confront CHOA's management, Dr. Bhatia agreed to the PIP.

27.

At the meeting at which the PIP was described to her (the "PIP meeting"), Dr. Bhatia raised an additional complaint of discrimination: addressing her exclusion from departmental meetings, she explained to Dr. Nusz and Kobi Varner that she was uncomfortable being forced to interact with Dr. Krista Johnson, who frequently made racist comments.

28.

At no point during the PIP meeting was it ever suggested that Dr. Bhatia was suspected of having any issues related to alcohol abuse or dependence or that she ever appeared at work impaired.

29.

At no point after the PIP meeting did anyone from CHOA ever suggest to Dr. Bhatia that she was not on track to successfully complete the PIP.

30.

Indeed, Dr. Nusz, her supervising physician, advised Dr. Bhatia that she was on track to successfully complete the PIP at the end of July. At her subsequent termination meeting, no one suggested that Dr. Bhatia had failed to satisfy the requirements of the PIP or describe any specific shortcomings in her performance.

## Dr. Bhatia is Extorted and CHOA Enables It

31.

In or around the Summer and Fall of 2020, Dr. Bhatia commenced a romantic relationship with Jasen "Jay" Elias.

32.

Unbeknown to Dr. Bhatia when the relationship began, Elias had been a lawyer in Oklahoma until 2015, when he surrendered his license while

disciplinary proceedings were pending against him, the equivalent of disbarment. *State ex rel. Oklahoma Bar Ass'n v. Bourland*, 19 P.3d 289, 291 (Okla. 2001) ("A resignation pending disciplinary proceedings is tantamount to disbarment").

33.

The disciplinary proceedings against Elias, who at the time went by the name Jasen Corns, arose from allegations that he manufactured a personal relationship with a wealthy female client 50-years his senior and bilked that client out of more than $1.4 million. *See State ex rel. Oklahoma Bar Ass'n v. Elias*, 348 P.3d 204 (Okla. 2015), attached as Exhibit "C."

34.

A finding was made in the disciplinary proceedings that throughout the proceedings, Elias had lied under oath and "threatened to exploit recordings and other potentially embarrassing materials he collected" of his victim in an attempt to force his victim and her representatives to dismiss their complaints against him. *See* Ex. C at 5.

35.

In keeping with that *modus operandi*, during the summer of 2020, Elias insinuated himself into Dr. Bhatia's life, creating a relationship of trust that he proceeded to violate in every imaginable way.

36.

During their short-lived relationship, Elias made multiple recordings of Dr. Bhatia after she had consumed alcohol.  Dr. Bhatia neither knew the recordings were being made nor consented to being recorded.  Hence, the recordings were illegally made under Florida law, the state in which all the recordings were made.

37.

Dr. Bhatia alleges on information and belief that certain of the recordings were made after Elias had drugged her and that Elias had drugged her and made the recordings for the specific purpose of criminally extorting Dr. Bhatia.

38.

After she ended the relationship, Elias began making extortionist demands on her, including that she give him $200,000 and the title to her a Range Rover vehicle.

39.

Every time she rejected his demands, his responses, generally in writing to create a paper trail for his extortion attempts, contained two features: false concern for Dr. Bhatia's mental and physical well-being and/or her alleged (and untrue) abuse of alcohol, and threats (often overt, but sometimes implicit) that if she did not acquiesce he would ruin her.  In particular, Elias made it plain that he would

report to CHOA that Dr. Bhatia worked while impaired and that he would use the recordings he had illegally made to bolster his claim.

40.

On July 9, 2020, Elias sent Dr. Bhatia an e-mail that explicitly threatened to end her career if she did not give him her Range Rover (which he falsely referred to as "his" and his daughter's car).

41.

When it became clear that Elias was willing to bring his false accusations to CHOA and the Georgia Composite Medical Board, Dr. Bhatia immediately notified CHOA, in a failed attempt to avoid exactly the sequence of events that came to pass.

42.

On July 24, 2020, Elias e-mailed one of Dr. Bhatia's attorneys and attached a draft letter to the Medical Board falsely reporting Dr. Bhatia's alleged alcohol abuse.

43.

Dr. Bhatia immediately forwarded the letter to Dr. Nusz, informed him what Elias was doing and why, and advised that this was not a good-faith

complaint but rather a further attempt at blackmailing and extorting her. *See* Exhibit "D."

44.

Dr. Bhatia kept CHOA informed of Elias's escalating misconduct. On August 13, 2020, she sent a follow-up e-mail to David Fensermacher, CHOA's Assistant General Counsel, updating him, copying her attorneys in case he had any concerns, and ironically, expressing her appreciation for "the support CHOA is giving me." *See* Exhibit "E."

45.

On August 14, 2020, after Elias filed a false complaint with the Medical Board and sent a copy to CHOA, Dr. Bhatia sent a similar e-mail to Donna Hyland, CHOA's CEO. *See* Exhibit "F."

46.

On August 25, Dr. Bhatia sent yet another e-mail explaining what was transpiring, this time to all her colleagues. *See* Exhibit "G."

47.

At no point during the time Elias was blackmailing and defaming Dr. Bhatia did anybody at CHOA express any concern that there was merit to Elias's false allegations, nor did anybody at CHOA contend that any alcohol abuse had

impaired Dr. Bhatia's ability to perform under the Employment Agreement. Instead, CHOA allowed Dr. Bhatia to continue to care for patients.

48.

Many of Dr. Bhatia's colleagues sent letters of support to the Medical Board, explaining that in the years they had known her, they never had any reason to believe she came to work while impaired.

49.

Given the highly complex and technical nature of the work of a pediatric anesthesiologist, it is inconceivable that Dr. Bhatia could have come to work and treated patients under the influence of alcohol without experiencing adverse patient outcomes.

50.

Despite the personal trauma of being extorted, Dr. Bhatia continued to successfully perform her job duties and meet all expectations under the unnecessary and retaliatory PIP.

51.

On August 16, 2020, Dr. Nusz asked Dr. Bhatia if she would serve as the "wellness champion" for their practice, a request that is entirely inconsistent with

any suggestion that her work was being affected by any mental health or substance-abuse issues. *See* Exhibit "H."

52.

Despite lacking any good-faith basis to believe her was suffering from any physical or mental ailment that affected her work in any way, on August 25, 2020, Dr. Bhatia was forced to take a drug and alcohol screen and placed on leave.

53.

Even after the drug and alcohol screen came back negative, Dr. Bhatia was not allowed to return to work.

54.

On September 9, 2020, Dr. Bhatia attended a meeting with representatives of CHOA at which she was terminated without written notice or an opportunity to cure any purported breach of her Employment Agreement for supposedly violating CHOA policies and procedures (although no specific policy or procedure was identified).

55.

At the termination meeting, CHOA refused to provide Dr. Bhatia with any substantive information upon which it based the termination decision and

dismissed the drug and alcohol screen as merely "one data point" in the decision-making process.

56.

Defendant CHOA apparently based its termination decision on the false claims and allegations of Elias, while ignoring that Elias' recordings were all made while Dr. Bhatia was in Florida, away from work and completely uninvolved in patient care.

57.

On September 9, 2020, Dr. Bhatia was terminated for cause, effective immediately, because CHOA claimed she had come to work while under the influence of or otherwise impaired by alcohol, in violation of CHOA's workplace policies.

58.

CHOA does not have and never has had any evidence that Dr. Bhatia ever came to work while under the influence of or otherwise impaired by alcohol, in violation of CHOA's workplace policies.

59.

CHOA's termination of Dr. Bhatia was pretextual and occurred to retaliate against Dr. Bhatia for her opposition to racism, discrimination, violations of public

policy, and disregard of public health by CHOA. Further, other white male employees who had not made complaints of discrimination were retained despite documented problems with substance abuse and mental health that had affected their job performance.

60.

Upon information and belief, CHOA representatives directly or indirectly informed other CHOA employees who, because of their duties and authority, had no reason to receive such information, that CHOA terminated Dr. Bhatia because she had come to work while under the influence of or otherwise impaired by alcohol.

61.

Further, as a result of CHOA's false and unfounded reason for Dr. Bhatia's termination, Dr. Bhatia has been and will be forced to disclose to potential employers the specific false reason for her termination by CHOA.

## COUNT I: BREACH OF CONTRACT

62.

Plaintiff repeats and incorporates by reference herein the allegations of Paragraphs 1 through 61 of the Complaint.

63.

The Employment Agreement between Dr. Bhatia and Defendant CHOA was a valid and enforceable contract that was intended to bind the parties until such time as one of the parties properly terminated the same.

64.

CHOA terminated Dr. Bhatia's employment and the Employment Agreement without justification or cause in breach of the terms of the Agreement.

65.

All conditions precedent to Dr. Bhatia's enforcement of the Employment Agreement have been performed or waived.

66.

Dr. Bhatia has been damaged and has suffered financial losses as a consequence of CHOA's breach of the Employment Agreement in an amount to be proven at the trial of this case.

67.

Section 14.11 of the Employment Agreement provides that the prevailing party in litigation to enforce the terms of the Employment Agreement "will be entitled to reasonable attorneys' fees and costs in addition to any other relief to

which such party may be entitled."  Accordingly, Dr. Bhatia is entitled to recover her costs of this action from CHOA.

## COUNT II: DISCRIMINATION CLAIM UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

68.

Plaintiff repeats and incorporates by reference herein the allegations of Paragraphs 1 through 61 of the Complaint.

69.

Throughout her employment with CHOA, Plaintiff was a member of various classes protected by Title VII of the Civil Rights Act of 1964.  In particular, Dr. Bhatia is Asian (race) and Indian (national origin).

70.

During her employment with CHOA, Dr. Bhatia was forced to endure harassing and disparaging remarks from other employees of CHOA.  Although Dr. Bhatia reported such incidents to upper management at CHOA, nothing was ever done to discourage such conduct or discipline employees who were responsible for creating a racially hostile environment.

71.

In addition, Dr. Bhatia's race and nationality were motivating factors leading to Dr. Bhatia's termination by CHOA.

72.

As a direct, legal, and proximate result of said discrimination, Dr. Bhatia has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Dr. Bhatia is entitled to recover back pay, future monetary losses, loss of her membership interest in PAS Investors, LLC, which she was forced to redeem as a result of her termination, and compensation for mental anguish and inconvenience.

73.

CHOA's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Bhatia's right to be free from discrimination based on race and national origin, entitling Dr. Bhatia to recover punitive damages.

74.

Dr. Bhatia is entitled to recover her reasonable attorneys' fees and costs of suit.

75.

Dr. Bhatia timely filed a Charge of Discrimination alleging violations of Title

VII with the EEOC on or about November 5, 2020.  A true and correct copy of the

Charge of Discrimination is attached hereto as Exhibit "I."

76.

The EEOC issued a Right to Sue Letter to Plaintiff on or about June 22, 2021.

A true and correct copy of the Right to Sue Letter is attached hereto as Exhibit "J."

## COUNT III: RETALIATION UNDER TITLE VII

77.

Plaintiff repeats and incorporates by reference herein the allegations of

Paragraphs 1 through 61 of the Complaint.

78.

Dr. Bhatia reported racist comments made and racist conduct engaged in by

other physicians and staff at CHOA to the management at CHOA.

79.

Within one week of making a report regarding an anti-Indian rant by Dr.

Josh Murphy, CHOA placed Dr. Bhatia on a performance improvement plan

("PIP").

80.

The basis for the PIP was concocted and had no basis in fact.

81.

Then, within roughly two (2) months of placing her in a PIP, CHOA terminated Dr. Bhatia, again, for completely concocted reasons, which were mere pretext for retaliating against Dr. Bhatia for her complaints of racism at CHOA.

82.

Dr. Bhatia is entitled to recover back pay, future monetary losses, and compensation for mental anguish and inconvenience for the violations described in this Count.

83.

CHOA has acted with malice or reckless indifference to Dr. Bhatia's right, entitling her to recover punitive damages.

84.

Dr. Bhatia is also entitled to recover her costs of litigation, including reasonable attorney's fees.

## COUNT IV: DISCRIMINATION CLAIM PURSUANT TO
## 42 U.S.C. § 1981

85.

Plaintiff repeats and incorporates by reference herein the allegations of Paragraphs 1 through 61 of the Complaint.

86.

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

87.

"'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

88.

Dr. Bhatia, a "person within the jurisdiction of the United States," is an Asian woman who was born in India and is a naturalized citizen of the United States of America.

89.

Dr. Bhatia worked for CHOA for over a decade before she was terminated on pretextual grounds despite her exemplary employment record, exceptional reputation, and not having violated any CHOA policies or procedures.

90.

During her employment with CHOA, Dr. Bhatia was forced to endure harassing and disparaging remarks from other employees of CHOA on account of her race and the race of Asian patients. Such comments were severe and pervasive and made on a regular basis.

91.

Comparable white employees were not subject to such racial harassment and disparaging remarks.

92.

Although Dr. Bhatia reported such incidents to upper management at CHOA, nothing was ever done to discourage such conduct or discipline employees who were responsible for creating a racially hostile environment.

93.

By the conduct described herein, CHOA intentionally deprived Dr. Bhatia of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of her contractual employment relationship with CHOA, in violation of 42 U.S.C. § 1981.

94.

As a direct, legal, and proximate result of the discrimination, Dr. Bhatia has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.  Dr. Bhatia is entitled to recover back pay, future monetary losses, loss of her membership interest in PAS Investors, LLC, which she was forced to redeem as a result of her termination, and compensation for mental anguish and inconvenience.

95.

Defendant CHOA's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Bhatia's right to be free from discrimination based on race, entitling Dr. Bhatia to recover punitive damages.

96.

Dr. Bhatia is entitled to recover her reasonable attorneys' fees and costs of suit.

## COUNT V: RETALIATION CLAIM PURSUANT TO 42 U.S.C. § 1981

97.

Plaintiff repeats and incorporates by reference herein the allegations of Paragraphs 1 through 61 of the Complaint.

98.

During her employment with CHOA, Dr. Bhatia was forced to endure harassing and disparaging remarks from other employees of CHOA on account of her race (Asian) and the race of Asian patients.

99.

Dr. Bhatia made multiple complaints to CHOA regarding the racially hostile work environment created by CHOA employees.

100.

In response to Dr. Bhatia's complaints of a racially hostile work environment, CHOA took materially adverse actions against Dr. Bhatia, including, but not limited to, placing her on a PIP and, ultimately, terminating her employment despite her exemplary employment record, exceptional reputation, and not having violated any CHOA policies or procedures.

101.

CHOA did not take similar materially adverse actions with comparable white employees that did not engage in protected activity and who had documented problems with substance abuse and mental health that had affected their job performance.

102.

CHOA's retaliatory actions would deter a reasonable employee from engaging in activity protected under 42 U.S.C. § 1981.

103.

As a direct, legal, and proximate result of the discrimination, Dr. Bhatia has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial. Dr. Bhatia is entitled to recover back pay, future monetary losses, loss of her membership interest in PAS Investors, LLC, which she was

forced to redeem as a result of her termination, and compensation for mental anguish and inconvenience.

104.

Defendant CHOA's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Dr. Bhatia's right to be free from discrimination based on race, entitling Dr. Bhatia to recover punitive damages.

105.

Dr. Bhatia is entitled to recover her reasonable attorneys' fees and costs of suit.

**COUNT VI: DEFAMATION**

106.

Plaintiff repeats and incorporates by reference herein the allegations of Paragraphs 1 through 61 of the Complaint.

107.

Defendant CHOA terminated Dr. Bhatia based upon the false and defamatory claim that she, as a pediatric anesthesiologist, had come to work while under the influence of or otherwise impaired by alcohol, in violation of CHOA's workplace policies.

108.

Upon information and belief, CHOA published such false and defamatory statements about Dr. Bhatia directly or indirectly to other CHOA employees who, because of their duties and authority, had no reason to receive such information.

109.

Further, as a result of CHOA's false and defamatory reason for Dr. Bhatia's termination, Dr. Bhatia has been and will be forced to disclose and thereby self-publish to potential employers the specific false and defamatory reason for her termination by CHOA.

110.

The false and defamatory statements at issue constitute defamation per se pursuant to O.C.G.A. § 51-5-4(a)(1) and/or (3). As such, no proof of special damages is required.

111.

As a direct and proximate result of the false and defamatory statements alleged herein, Dr. Bhatia has lost income, opportunities, and, upon information and belief, patients. As such, Dr. Bhatia seeks and is entitled to recover special damages pursuant to O.C.G.A. § 51-5-4 in an amount to be proven at trial.

112.

As alleged herein, Defendant CHOA acted in a manner showing willful misconduct, malice, wantonness, oppression, and/or that entire want of care that raises the presumption of conscious indifference to consequences.

113.

CHOA acted with malice and without privilege and with the specific intent to cause harm within the meaning of O.C.G.A. § 51-12-5.1(f).

**WHEREFORE**, Dr. Bhatia prays that she recover the following:

(a)   The Court enjoin Defendant's continuing unlawful employment practices;

(b)   Back pay, front pay, compensation for all her monetary losses, and all monetary awards allowed by law;

(c)   Recovery of losses sustained by Dr. Bhatia as a consequence of her forced sale of her membership interest in PAS Investors, LLC;

(d)   Any additional liquidated damages;

(e)   Punitive damages in an amount to be determined by the enlightened conscience of the jury;

(f)   Litigation costs, including reasonable attorneys' fees; and

(g)    Such  other  and  further  relief  as  the  Court  may  deem

appropriate.

This 8th day of July, 2021.

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515
Oladimeji A. Ogunsola
Georgia Bar 857808

**ICHTER DAVIS, LLC**
3340 Peachtree Rd. NE, Suite 1530
Atlanta, GA  30326
404-869-7600 (phone)
404-869-7610 (fax)
cichter@ichterdavis.com
dogunsola@ichterdavis.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), undersigned counsel certifies that this filing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B).

/s/ Cary Ichter
Cary Ichter
Georgia Bar No. 382515